FILED
CLERK
12/16/2015 3:13 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:

JOE'S FRIENDLY SERVICE & SON, INC. d/b/a THATCHED COTTAGE AT THE BAY,

                Debtor,

----------------------------------------------------------------x

In re:

THATCHED COTTAGE, LP,

                Debtor,

----------------------------------------------------------------x

YAMA RAJ,

                Appellant,

    -against-

R. KENNETH BARNARD, ESQ., Chapter 11 Operating Trustee, and BETHPAGE FEDERAL CREDIT UNION,

                Apellees.

----------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**

Chapter 11
Case No.: 14-70001(REG)

Chapter 11
Case No.: 14-70002(REG)

15-cv-01740 (ADS)

**APPEARANCES:**

**BERGER, FISCHOFF & SCHUMER, LLP**
*Attorneys for the Appellant*
40 Crossways Park Drive
Woodbury, NY 11797
        By:  Gary S. Fischoff, Esq., Of Counsel

1

**LAMONICA HERBST & MANISCALCO, LLP**
*Attorneys for the Appellee R. Kenneth Barnard as Chapter 11 Trustee of the Estates of Joe's Friendly Service & Son d/b/a Thatched Cottage at the Bay and Thatched Cottage LP*
3305 Jerusalem Avenue
Wantagh, NY 11793
    By: Gary F. Herbst, Esq., Of Counsel

**CERTILMAN BALIN ADLER & HYMAN, LLP**
*Attorneys for Appellee Bethpage Federal Credit Union*
90 Merrick Avenue
East Meadow, NY 11554
    By: Richard J. McCord, Esq., Of Counsel

**SPATT, District Judge:**

The subject of this opinion is the second of two related appeals, both of which were taken by the Appellant Yama Raj ("Raj" or the "Appellant") from orders of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

As will be discussed more fully below, the first of these appeals (the "First Appeal") was adjudicated by an August 21, 2015 Memorandum of Decision and Order issued by this Court. See Raj v. Barnard, Case No. 2:15-cv-00376 (ADS), Docket Entry #14. In that opinion, the Court denied the First Appeal, and affirmed a January 6, 2015 order of the Bankruptcy Court, which denied a motion by the Appellant to: (i) vacate his purchase of certain real property at a public auction; and (ii) refund a deposit (the "Desposit") that he made in furtherance of that purchase.

Presently before the Court is a second appeal (the "Second Appeal"), which arises from same underlying transaction. For the reasons that follow, the Second Appeal is denied in its entirety, and this case is closed.

2

## I. Background

The facts and procedural history of this case were set forth in detail in the Court's related August 21, 2015 Memorandum of Decision and Order, and the parties' familiarity with them is presumed. Nevertheless, the following background information is relevant to the Second Appeal.

On or about January 2, 2014, two related entities, namely, (1) Joe's Friendly Service & Son, Inc. d/b/a Thatched Cottage by the Bay ("Joe's Friendly"), and (2) Thatched Cottage, LP ("Cottage LP", together with Joe's Friendly, the "Debtors"), filed petitions for reorganization under Chapter 11 of the Bankruptcy Code ("Chapter 11"). The Bankruptcy Court ordered that the Debtors' Chapter 11 petitions (collectively, the "Petitions") be jointly administered.

One of the Debtors, namely, Joe's Friendly, owned and operated a catering hall (the "Facility"), which was located on certain parcels of real property in Centerport, New York (the "Real Property"). The other Debtor, namely, Cottage LP owned the underlying Real Property. The Facility and the Real Property will be referred to collectively as the "Premises."

The Appellee Bethpage Federal Credit Union ("BFCU") is the holder of first priority liens and security interests in all of the Debtors' assets, including the Premises.

On July 4, 2014, the Appellee R. Kenneth Barnard ("Barnard"), having been duly appointed as the Chapter 11 Operating Trustee for the Petitions, took control of the Facility's operations. On or about July 24, 2014, he sought to sell the

Premises and the Debtors' remaining assets in order to satisfy their outstanding obligations. At the time, the Facility was still a going concern.

On August 11, 2014, the Bankruptcy Court approved certain proposed terms and conditions for a public sale of the Premises (the "Terms of Sale"). On September 24, 2014, the sale was conducted.

The Appellant was provided with a copy of the Terms of Sale and agreed to be bound by them. In fact, he was required to read and execute the Terms of Sale in order to participate in the auction.

Ultimately, the Appellant entered the highest bid for the Premises. As reflected in a related Memorandum of Sale, the Appellant's bid was for $4,650,000, plus a 4% buyer's premium of $186,000, for a total sale price of $4,836,000. In connection with his purchase, he paid a non-refundable deposit in the amount of $350,000.

Relevant here, the second-highest bidder at the auction was BFCU.

Pursuant to the Terms of Sale, within 48 hours of the auction, the Appellant was required to deliver a bank check in an amount of at least 10% of the bid price, less the initial deposit in the amount of $350,000, plus the 4% buyer's premium. He complied, and deposited a total amount of $651,000 (previously defined as the "Deposit").

On October 16, 2014, following a hearing, the Bankruptcy Court confirmed the sale of the Premises. In relevant part, the Terms of Sale required the

Appellant, as the successful bidder, to close title to the Premises within thirty days. The Terms of Sale further provided that:

> <u>The failure to Close for any reason whatsoever</u> (except the Trustee's inability to deliver the insurable title to the [Premises]) including, the failure to pay the balance of the Purchase Price(s) on the date of the Closing(s) <u>will result in the Trustee retaining the Deposit(s)</u>, [and] the termination of the Successful Bidders' right to acquire the [Premises]. The Successful Bidder(s) will have no recourse to any other property or assets of the Trustee and the Debtors' estates, which will be exempt from levy, execution or other enforcement procedure for the satisfaction of Successful Bidders' remedies. The provisions of this section will survive the Bidding Procedures or the Closing(s).

(emphasis supplied).

The closing was originally scheduled for November 15, 2014 but, on consent of the parties, was adjourned to November 24, 2014.

For reasons not relevant to the Second Appeal, but which were discussed in the Court's August 21, 2015 opinion, in late November, 2014, the Appellant notified Barnard that he would not close on the Premises and demanded a refund of the Deposit.

On December 2, 2014, Barnard notified the Appellant that the closing would be rescheduled for December 16, 2014. In addition, Barnard cautioned the Appellant that if he failed to appear and tender the balance of the purchase price for the Premises, the Appellant would be deemed in default under the Terms of Sale, and, relevant here, Barnard would retain all funds paid by the Appellant, including the Deposit.

The closing did not take place as scheduled and the Trustee declared the Appellant to be in default under the Terms of Sale, thereby forfeiting the Deposit.

5

On December 12, 2014, the Appellant made a motion in the Bankruptcy Court to: (i) vacate the Bankruptcy Court's October 16, 2014 order confirming the Appellant's purchase of the Premises; (ii) rescind the contract of sale; and (iii) direct a refund of the Deposit.

On January 2, 2015, while the Appellant's motion was pending before the Bankruptcy Court, the Trustee transferred title to the Premises to BFCU, the second-highest bidder for the Premises. More particularly, the Trustee conveyed the Premises to a BFCU-controlled entity known as Business Services Group, LLP, which was formed for the sole purpose of acquiring title to the Premises.

On January 6, 2015, following oral argument, the Bankruptcy Court denied the Appellant's motion to reverse the sale in its entirety. In addition, pursuant to the Terms of Sale, the Bankruptcy Court determined that, by the Appellant's default, the Deposit had become property of the Debtors' bankruptcy estate, which was subject to creditors' claims and eventual distribution by the Trustee.

As noted above, on January 22, 2015, the Appellant filed the First Appeal, which sought relief from the Bankruptcy Court's January 6, 2015 decision.

On or about March 9, 2015, while the First Appeal was pending before this Court, the Trustee filed a motion in the Bankruptcy Court, seeking approval of a stipulation that it had entered into with BFCU (the "Trustee's Stipulation"). The Trustee's Stipulation authorized the Trustee to release $626,000 from the Appellant's Deposit to BFCU, as a first priority lien holder, in partial settlement of BFCU's claims against the Debtors' bankruptcy estates.

6

On March 24, 2015, over the Appellant's objection, the Bankruptcy Court (Grossman, J.) So Ordered the Trustee's Stipulation.

Two days later, on March 27, 2015, the Appellant filed the Second Appeal, seeking relief from the Trustee's Stipulation. In particular, the Appellant asserted the following grounds for reversal: (i) BFCU's security interest in the Debtor's assets, including the Premises, does not attach to the Deposit; and (ii) any distribution of the Deposit amount should be stayed pending the outcome of the First Appeal.

On August 21, 2015, this Court denied the First Appeal, and affirmed the Bankruptcy Court's January 6, 2015 order. In doing so, the Court upheld the sale of the Premises to the Appellant and the Trustee's right under the Terms of Sale to retain the Deposit as property of the Debtors' bankruptcy estates.

On October 27, 2015, the Trustee wrote a letter to the Court, stating, in relevant part, as follows:

> . . . On August 28, 2015, the District Court entered the Judgment in the First Appeal. The time to appeal the District Court's ruling in the First Appeal has now expired. More importantly, the denial of the First Appeal renders [the Second Appeal] moot.
> The Appellant's counsel conveyed to the Trustee that he did not intend to prosecute this appeal. In response, the Trustee prepared a stipulation and order dismissing this action. The Trustee has received no response to the terms of the proposed stipulation despite the representations made by the Appellant's counsel.
> Accordingly, the Trustee respectfully requests that this Court dismiss this appeal and enter an Order rendering this appeal closed, or in the alternative direct the Appellant's counsel to show cause [ ] as to why the appeal should not be dismissed.

Docket Entry #14.

7

In response to this letter, on October 29, 2015 BFCU also wrote to the Court. In relevant part, BFCU reiterated the Trustee's assertion that the time for the Appellant to appeal this Court's August 21, 2015 decision has expired and added the following information:

> . . . The bankruptcy court order which is the subject of this appeal [namely, the Trustee's Stipulation] authorizes the Trustee to turn over to BFCU the sum of $626,000.00 from the $651,000.00 deposit remitted to the Trustee by Raj in connection with his Successful Bid for the Debtors' real property [ ], based on Raj's default under the bankruptcy court order confirming the sale. However, the Trustee will not disburse the funds to BFCU while this appeal is still pending. Hence BFCU is being severely prejudiced by the continued pendency of this appeal. . . .

Docket Entry #16.

In response to the Appellees' joint request for dismissal based on mootness, counsel for the Appellant wrote a letter to the Court, stating, in relevant part, that: (i) he does not object to the Appellees' proposed stipulation dismissing this Appeal; however, (ii) his client, namely, the Appellant, "has not returned [his] numerous telephone calls," thereby leaving counsel "in a position where [he] can not [*sic*] sign the stipulation." Docket Entry #15.

On November 23, 2015, the Court issued an order, which granted the parties leave to supplement their briefs in order to address any new issues presented by the August 21, 2015 Memorandum of Decision and Order, including the question of mootness raised in the Appellees' letter submissions. The Appellant did not submit any additional information or argument.

8

## II. Discussion

### A. The Applicable Legal Standards

The district court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. See Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC, 476 B.R. 60, 65-66 (E.D.N.Y. 2012) (Spatt, J.) (citing In re MarketXT Holdings Corp., 346 F. App'x 744, 745 (2d Cir. 2009)).

However, in light of the Court's denial of the First Appeal and the parties' related letter submissions, a threshold issue is presented, which must be resolved before the merits of the Second Appeal may be considered, namely, whether this Court's August 21, 2015 Memorandum of Decision and Order divested the Appellant of standing to prosecute the Second Appeal.

### B. As to the Appellant's Standing

" '[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be 'a person aggrieved' – a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court.' " In re Dynergy Inc., 12-cv-8908, 2013 U.S. Dist. LEXIS 78479, at *24 (S.D.N.Y. June 4, 2013) (quoting In re DBSD N. Am., Inc., 634 F.3d 79, 89 (2d Cir. 2010)), aff'd, 770 F.3d 1064 (2d Cir. 2014). "This standard is stricter than Article III's 'injury in fact' test for standing and reflects a concern . . . that 'if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad parties who are indirectly affected by every bankruptcy court order.' " Boniovanni v. Grubin, 12-

cv-6387, 2013 U.S. Dist. LEXIS 139641, at 812-*13 (E.D.N.Y. Sept. 27, 2013) (quoting Kane v. Johns-Manville Corp., 843 F.2d 636, 642 (2d Cir. 1988)).

In this case, the Court has previously held that, pursuant to the Terms of Sale, the Appellant may not invalidate his prevailing auction bid for the Premises. Further, the Court held that, as a consequence of his failure to close on the transaction, the Appellant forfeited the Deposit, which is now the property of the Debtors' bankruptcy estates. Under these circumstances, the Court can discern no rational basis for concluding that the Appellant is presently a person who is "directly and adversely affected pecuniarily" by the Trustee's Stipulation. On the contrary, the law of the case is that the Appellant no longer has a legally cognizable interest in the Deposit funds, and the Appellant has not presented any evidence or argument to the contrary.

In this regard, the Court notes that it specifically granted the Appellant an opportunity to supplement his position in light of the resolution reached on the First Appeal and, if necessary, in response to the Appellees' subsequent letter submissions. There is no question that the Appellant was on notice of the Appellees' contention that he lacked standing to prosecute this appeal. In fact, his counsel responded in kind to the Appellee's letters, representing to the Court that, although he cannot identify any basis for withholding consent to dismissal, his client, namely, the Appellant, had ceased communicating with him.

In any event, to date, the Appellant has not submitted any evidence that he will be affected by the consummation of the Trustee's Stipulation or the resultant

10

release of a portion of the Deposit to BFCU, so that he should be permitted to prosecute this appeal. Accordingly, the Court finds that the Appellant lacks standing and dismissal is warranted.

### III. Conclusion

Based on the foregoing, the Court dismisses the instant appeal for lack of appellate standing and the Clerk of the Court is directed to close this case.

Dated:    Central Islip, New York
          December 16, 2015

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge